## ANDREWS, (ROCKVILLE & W. TURNPIKE ROAD v.)

[See Rockville & W. Turnpike Road v. Andrews, Case No. 11,984.]

---

## ANDREWS, (SCUDDER v.)

[See Scudder v. Andrews, Case No. 12,564.]

---

## ANDREWS v. SNYDER.

[See Andrews v. Spear, Cases Nos. 379 and 380.]

---

## Case No. 378.

### ANDREWS et al. v. SOLOMON et al.

[Pet. C. C. 356.][1]

Circuit Court, D. Pennsylvania. Oct. Term. 1816.

WITNESS—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT — EQUITY PLEADING — ADDITIONAL PARTIES—AGENCY.

1. A person who came to a knowledge of facts while he was a student in the office of an attorney who was consulted by a party in this cause, in relation to the matter to which he is called to testify, may be a witness. The rules of law which prohibit an attorney or counsel being witnesses, do not apply to a student in the office of such attorney or counsel.

2. Where the original bill contains no allegations against defendants, who have nevertheless answered the bill, they having been made parties by permission given by the court to the complainant, but who did not file an amended bill, if even a proper case for the interference of a court of equity were made out, the court would be compelled to dismiss the bill as against these defendants.
[Cited in Baker v. Biddle, Case No. 764.]

3. A court of equity will not interfere where the parties have a remedy at law.
[Cited in Baker v. Biddle, Case No. 764.]

4. The irregularities of an agent in relation to the disposition of the proceeds of real estate sold by him, do not affect the title to the estate conveyed to the purchasers.
[Cited in Baker v. Biddle, Case No. 764.]

---

[1] [Reported by Richard Peters, Jr.]

In equity. This was a bill on the equity side of the court, filed by the widow and all the legal representatives of H. Solomon, deceased, except H. Solomon one of the defendants, in order to set aside the sales and conveyances of certain lots of ground in the city of Philadelphia, made by the sheriff under a writ of venditioni exponas issued at the suit of the defendant, E. Solomon, against the executors of his father, the aforesaid H. Solomon, deceased, and for other and further relief. By the bill it appears, that H. Solomon the father, died seized of the legal estate in two of the lots in question, and that the other five lots were granted by the state of Pennsylvania to a Mr. Franks. The bill alleges, that the purchase money was paid either by the said H. Solomon the father, or by his widow; and that she took out the patent in the name of Franks, intending it, however, to be in trust for herself, and the children of the said H. Solomon. Franks afterwards conveyed these five lots to the said widow and the children of the said H. Solomon to take, the widow her dower, and the children according to the intestate laws of this state. The bill then charges that the defendant E. Solomon, although he was the agent of the complainants (they residing in New York, and he in Philadelphia) in respect to the management of the said seven lots, yet, with a view to defraud them thereof, purchased a note of his father's due to the bank of North America, amounting together with interest to about the sum of 1300 dollars, for the sum of 50 dollars; and having instituted a suit thereon and recovered a judgment for the amount so due, he procured the above lots to be sold under a venditioni exponas, for about 1400 dollars, although in truth, he had previously agreed with a certain G. Bickham for the sale of the five lots, for upwards of 3000 dollars; and immediately after the said sheriff's sale, he sold the other two lots to the defendant, F. Gaul, for the price of 1850 dollars. That after the above sales and conveyances by the sheriff to G. Bickham, the judgment under which they were made was upon a writ of error reversed.

The answer of the executors of G. Bickham, denies all knowledge of the allegations in the bill, except that they find by certain papers, to which they refer, that the five lots were sold under the venditioni exponas to the said G. Bickham, and were conveyed by the sheriff to the said G. Bickham and to Jacob Reese and David Lydeg, for the use of the children of the said Jacob Reese in fee, and in case of their dying before they attained their full age, then to the use of the said Jacob Reese. That although the consideration mentioned in this deed was only 610 dollars, yet that 3266 dollars and 50 cents, were in fact paid by G. Bickham to the defendant, E. Solomon, as appears by his receipt. The answer of F. Gaul, states

that he negotiated with a broker for the purchase of the other two lots, which were conveyed to him by E. Solomon for the consideration of 1850 dollars, which was paid to him, and he denies all notice of fraud or contrivance between G. Bickham, or any other person and the said E. Solomon. E. Solomon in his answer, denies that he was the agent of the plaintiff Andrews, the husband of one of H. Solomon's daughters, and of Meyers, who married another of the daughters, whose children are complainants; and he states further, that the sale of these lots took place at the instance, and with the knowledge of his mother, and of H. Solomon the other complainant, to whom the whole of the purchase money received for the above lots was paid. He states also, the total insolvency of his father at the time of his death.

Jacob Reese demurs to the relief sought by the bill for want of equity, and to the discovery of his legal title as well as to the relief, so far as the bill seeks to make him accountable for the fraud imputed to G. Bickham. He also answers the residue of the bill, and states that H. Solomon, the father, purchased the five lots from the state, and that the patent to Franks was granted under a secret trust, for the benefit of the said H. Solomon, the father; that G. Bickham purchased the five lots at the request of the executors of P. Lydeg, deceased, for the use of the two children of the defendant, from whose funds the purchase money was paid to E. Solomon. The answer of the two infant sons of Jacob Reese, by their guardian, is in the usual form, praying the protection of the court. To these answers general replications were put in.

At the hearing of this cause, the deposition of Daniel Addis, was offered by the complainants, and was objected to by the defendants, upon the ground that the facts stated by the witness, came to his knowledge whilst he was a student of Mr. Brown, the attorney who was consulted by Bickham and the defendant E. Solomon, in relation to the mode of securing the title to the aforesaid lots, and that it was in his character as student, that he obtained his information. The witness upon his cross examination, stated, that the declarations of Bickham were not made to him professionally, but that he frequently talked to him upon the business whenever he met him. In support of the objection, were cited [Morris v. Vanderen,] 1 Dall. [1 U. S.] 66; [Du Barre v. Livette,] Peake, 77. On the other side were cited 1 Phil. Ev. 103; Gilb. Ev. 138; [Holmes v. Comegys,] 1 Dall. [1 U. S.] 439; [Vaillant v. Dodemead,] 2 Atk. 524.

By the Court: An attorney is not permitted to disclose as a witness, the secrets of his client, because in doing so, he would betray a confidence, which from necessity the client must repose in him. All the reasons which apply to the attorney, apply to an interpreter

between the client and the attorney, of whom he is merely the organ. Not one of these reasons apply to the student; no confidence is reposed in him by the client, nor is there any necessity that it should. The court feels no inclination to extend the rule further than it has already gone. The evidence was admitted.

Hopkinson for F. Gaul contended, that the reversal of the judgment cannot affect the title of his client, the act of assembly (1 Laws Pa., Smith's Ed., 61) having declared, that purchasers under a judgment, which is afterwards reversed, shall not have their titles impeached on that account; that there is no imputation of fraud against the defendant, nor is he even charged with notice of fraud, in G. Bickham or Solomon.

The counsel for the complainants contended, that as the sale by the sheriff was merely nominal, all the lots having been previously sold at private sale for a much larger sum than that at which they were struck off to G. Bickham; the act of assembly, which was clearly intended to protect fair bona fide purchasers, under the sheriff, cannot apply. In England the rule in relation to purchasers of chattels at a sheriff's sale, under a judgment which is afterwards reversed, is precisely the same, as that established by this act of assembly; and yet if the sale be not fair, and is not wholly under the execution, the title of the purchaser is not protected. So the same rule applies to sales in market overt and the same distinction takes place. [Hoe's Case,] 5 Coke, 90b; [Manning's Case,] 8 Coke, 96b; [Goodyer v. Junce,] Yelv. 180; [Holford v. Andrewes,] Moore, 573; 19 Vin. Abr. 439, p. 4; 2 Bl. Comm. 450; 2 Inst. 713; [Close v. Gillespey,] 3 Johns. 525; [Mortlock v. Buller,] 10 Ves. 292.

If G. Bickham was concerned in a contrivance with E. Solomon to defraud the complainants, those for whom he acted, or who claim under him, though without notice are affected by his fraud. [Huguenin v. Baseley,] 14 Ves. 289, 2 Fonb. 158; [Worseley v. Demattos,] 1 Burrows, 479. Chauncey, for Reese and his children, contended, that upon the demurrer, the bill must be dismissed, as to Reese the father; because the bill contains no charge whatever against him. His name is not even mentioned in the bill, and consequently if Bickham was guilty of fraud, still the defendant cannot be made to answer for it. The truth is, that Reese and his two sons were not originally defendants to this bill; but were afterwards made so, upon motion and leave of the court, but no amended bill was filed against them. There being no charge then, of any kind against these defendants, the complainants are entitled to no relief. But if this objection was not in the way, still the plaintiffs could not recover in this suit. because there is not the slightest evidence of fraud proved against Bickham or Solomon; and if there was, the defendants' title cannot be impeached on that account. Again, if the complainants have any title, it is merely at law.

WASHINGTON, Circuit Justice. From the evidence given in this cause, it distinctly appears, that E. Solomon, the defendant, was the agent of the complainants, for protecting the whole of this property, as well as for the sale of it. That he informed them of the sales he had made of the five lots, and that which he expected to make of the two lots; and he intimated to them, very clearly in one of his letters, that it would be necessary, notwithstanding those private sales, to go through the form of a public sale. He stated to them that he had sold the five lots for 3,200 dollars, and was in treaty for the sale of the other two for 1,600 dollars. No evidence has been given to show that the complainants, or either of them, did, at any time object to the sales of these lots, or to the prices at which they were sold. The sales under the venditioni exponas, though merely formal as to the parties immediately interested in that property, were rendered necessary to protect the titles against the creditors of H. Solomon; for which purpose alone the note was purchased and the proceedings on it instituted by E. Solomon.

Without stopping, for the present, to notice the informalities which the proceedings in this cause exhibit, I shall proceed upon the complainants' case as presented by themselves, to inquire where is their equity against any of the defendants, except E. Solomon? The gravamen of the bill is, that although E. Solomon was the agent of the complainants, he nevertheless contrived, covertly, to have their property seized and sold under execution, for about one-fourth nominally of the sum at which he had actually sold it by private bargain. These allegations may, and certainly do afford a very good reason for compelling E. Solomon to account for the purchase money actually received by him; but not for setting aside the sales of this property, sanctioned as they were by the complainants. If the sheriff's deeds passed to the grantees the legal estate in these lots, a court of equity will protect that estate, unless the purchasers were guilty of a fraud, or purchased with a knowledge of a fraud in those under whom they claim. But what evidence is there of fraud in any part of these transactions? It is not even pretended that the price at which these lots were sold, was inadequate to their value; nor is it pretended that the private sales of them were made without authority. If, on the other hand, the sheriff's deeds did not pass the legal estate, then the objection to those conveyances is purely of a legal nature, and consequently the complainants are not entitled to relief in a court of equity.

As to the five lots, the real beneficial purchasers were the children of Jacob Reese, G. Bickham acting as the agent of their guardian for their use. It is said that their title must be affected by the fraud of that agent. Be it so. But there is no fraud proved against Bickham, as has before been stated. Jacob Reese, therefore, and his sons, the cestui que use in the sheriff's deed, have both the legal and the equitable estate in this property. As to the two lots, which were purchased by Bickham for E. Solomon, and by him conveyed to F. Gaul, it is contended, that the title is not protected by the act of assembly, because that act ought not to be construed to apply to purchases made by the plaintiff himself, or to mere formal sales under execution as this was. As to this argument, I give no opinion, but will for the present admit it. Still the complainants cannot succeed in setting aside the sales of these lots, without showing themselves to be entitled to this relief upon some ground of equity. Now, in addition to the observations before made in relation to the five lots, it may be observed, that, as to those conveyed to Gaul, he is not even charged in the bill with notice of any fraud or other circumstance to invalidate his title in a court of equity; and, in his answer, he asserts himself to be a bona fide purchaser, without notice of any of the circumstances alleged against Bickham and E. Solomon.

Having spoken of informalities in the proceedings in this cause, it may be proper to state them more particularly, for the information of the bar. Subsequent to the filing of this bill, the court, upon the motion of the plaintiff, permitted the complainants to amend by making Jacob Reese and his sons defendants, but no amended bill was filed. The original, or rather the only bill filed in the cause, contains no allegations against these new made defendants, nor are their names even mentioned in it. During the argument, and as soon as this omission was discovered, the court gave leave to the complainants to file an amended bill; not to state any new matter, which would have been improper at that stage of the cause, but merely to call upon these new defendants to answer the original bill. But, even if the complainants had made out a proper case for the interference of equity, in reference to the title of Bickham, still the court would be compelled to dismiss the bill as to these defendants, since there is no allegation against them to which they could answer. It is true they have answered, but this does not entitle the complainants to relief against them, since they have not shown in their bill any ground for such relief. Mitf. Eq. Pl. 87.

The preceding part of this opinion was intended to show, that, upon the merits of the cause, the complainants are not entitled to relief against these defendants, and consequently that they cannot suffer on account of the informality just stated. As to the liability of E. Solomon, to account for the purchase money received by him for the above seven lots, with legal interest thereon, there can be no doubt. The court therefore direct an account as to these sums, and dismiss the bill with costs against the other defendants.